Case number 19-7168. Gregory Selden, Appellant v. Airbnb, Inc. Mr. Imadjirou for the appellant, Mr. Morota for the appellee. Mr. Imadjirou, good morning, whenever you're ready. Good morning, Judge. Good morning, my name is Ike Imadjirou, I'm the counsel for Appellant Gregory Selden, and may it please the court. Today the court is hearing Mr. Selden on his belief that he was not provided reasonable notice of arbitration terms, that his arbitration claims, excuse me, that his claims brought in the district court are not arbitrable, and that he was not given a fair shot at the arbitration during the arbitration proceedings. First and foremost, Mr. Selden does not believe that he was provided reasonable notice of the terms and conditions provided by Airbnb. As we now know, based upon case law and various circuits, that a consumer must be given, a reasonably prudent consumer, internet user, must be given notice of terms and conditions before they sign up or proceed with any services from an online organization or company. Is your theory that any sign-in wrap, by definition, is insufficient notice? Your Honor, Judge Kessler, that is not our theory, that any sign-in wrap, but we do believe that a sign-in wrap should provide clear conspicuous notice of terms. So, if it's not the fact that someone had to click on the link, what else could possibly be insufficient with this? You have the three sign-up options and then immediately under it, you have a simple statement, by signing up I agree to the terms, and there's contrast in the color and it's simple and it's right there. Yes, Judge, so the sign-in procedure that Airbnb put forth has three different sign-up buttons. Mind you, let me draw the Court's attention that this was 2016, so right now it's slightly more, the consumer has gotten a little more prudent as to what's going on in terms of signing up, but if you take a look at the sign-in procedures, it says sign up with Facebook, sign up with Google, sign up with Amazon, it doesn't suggest that you're signing up with Airbnb, it says sign up with Facebook, so sign-in wrap, sign-up wrap, that you're looking at before you may confuse or provide a confusing idea to this consumer that you're going to sign up with Facebook rather than signing up with Airbnb. It is one of those advertisements or other types of companies unaffiliated to Airbnb that the Courts and Nicosia and maybe Amazon and Cullinan have discussed as problematic for consumers. So if you also look at the sign-up mechanism or procedure, sign-up mechanism from Airbnb, you look at, it says sign up with Facebook, but nowhere underneath that sign up with Facebook are the terms and conditions placed underneath so that the consumer knows that they are signing up with Airbnb. Mr. Selden, in this case, it's undisputed, he signed it up with Facebook. Once he signs up with Facebook, it takes him to another page, it takes him through Facebook's mechanism and then back into getting into Airbnb to continue the process of looking for accommodations. I think that in itself is also confusing for a consumer and not necessarily something that is in line with the case law that was proposed. Mr. Amadouro, what about the Second Circuit's decision in Meijer versus Uber? I mean, the website there seems very, I mean, of course it's not binding on us, but the website there seems very similar to the website that Airbnb used. And there it was found, the Uber website was found to provide reasonable notice. So I'm wondering, can you distinguish the Airbnb website from this Uber website? Yes, Judge Rapp, I believe I can. I think that if you take a look at the mechanism, first of all, there's two different sign-up screens for the Uber case. You have a register sign-up and a payment sign-up. So that's two different screens. So the first, the register sign-up in Meijer has the Google or Facebook button at the top, but there's no terms and conditions in that particular registration page. The second payment page has the terms and conditions that has nothing with a Google or nothing with a Facebook page that leads the consumer to believe that, excuse me, that can distract the consumer, I should say. If you look at the payment button or payment options in the Meijer case, it has the mechanism for the consumer to pay. And at that point in time, the consumer knows, hey, I'm paying for this service, and it's time for me to agree to these terms and conditions, right? But in this particular case, in Airbnb's case, the sign-up, Facebook, Google, or email are all in one page with terms and conditions, but the consumer can easily be led away by clicking the button right away with Facebook and then becoming distracted with the Facebook button and the Google button. So your theory is that because there are these other platforms, either Facebook or Google, that's distracting from the terms and conditions of Airbnb? Yes, that's right. I think that that is the theory in this particular case. That and also the other distracting terms and conditions that are in red font below the sign-up with email button. I think the red font that doesn't match the other buttons above that are distracting for the consumer. And in the Meijer case, when you click on Facebook, don't you travel the same route you do in this case? Because on your registration page, you must click either Google or Facebook. And you said you were concerned because if you click on Facebook, then you're in Meijer, no? No, Judge, I don't think so. I'm not sure how the payment processing would work at that point for consumer if they are rerouted from the Facebook page back to whatever service they're using on Uber. So I'm not sure about those particular facts. But I know that the once the consumer in Meijer is on the payment page, they know that they are still working with Uber. No, no, I understand what you're saying there. But one of your arguments here was that to get started, you have to click, say, for example, Facebook. Well, that's true in Meijer as well. You have to click on either Google or Facebook. So you're saying that's a distraction. So you don't click on next in Meijer. First, you have to click on Google or Facebook, or you do the sign in below. So I'm not sure. I'm trying to understand why that's less confusing in your mind. Well, I also think, Judge Edwards, if you take a look at the nexus between, so if you take a look at the Meijer screen, the register page, there's also nothing on that register page, the registration page or box that has anything to do with the terms and conditions, I believe, until you get to the payment page. So the consumer, if being led to Facebook, will then go into another orbit, I believe, and not understand whether those terms and conditions are related to Facebook. This particular, if the consumer in Airbnb signs up with Facebook or signs up with Google, I think that, again, it provides a distraction of different advertisements. Also, the fragmented screen, which Mr. Sheldon had raised in his brief, is also a distraction as well. You have the or here within the same screen, within the Airbnb sign up screen, the or is also separating both of the companies. Again, a user, a reasonably preeminent user may be confused, I think, at that point between where, in fact, or whose terms and conditions are applying, I believe, in this particular case. Fair Major, can I ask you a question about your argument about Title II prohibiting arbitration of these claims? I'm wondering, can you point to any other federal statute that specifically prohibits arbitration of claims under that statute, or any case interpreting a statute to prohibit arbitration of claims? Your Honor, so we didn't provide any other statutes that prohibit arbitration, but I think that it's very important that this Court look at the language and text of the statute. I know I've been briefed, but again, this statute in 1964 came out after the arbitration or FAA was passed. I think looking at the text of the statute saying, without regard, which means notwithstanding, it doesn't matter whether someone has gone through any type of administrative process or remedied law. I think that in itself suggests that arbitration is inapplicable to this particular statute. I think that the federal courts, in case law and the cases that we've cited, suggest that this particular statute is in the purview of the federal courts and not within arbitration. I was just, I mean, I was unable to locate any analogies, right, where courts have actually read a federal statute to prohibit arbitration. And so I just think there's such a strong presumption in favor of arbitrability. And even, you know, in the Title VII cases, you know, arbitration is permitted under Title VII. So that's why I was just looking, you know, if there were any other examples of statutes. Judge Ross, I'm sorry. The statute that Title VII does not have the same language as, you know, Title II. The statute was written in 1964. I don't think that would have, 1964, I think that the language within Title II pertains exclusive and the without regard is not contained in subsequent statutes like Title VII. It is within the Age Discrimination Act on the exclusivity of the federal courts. I don't think, I don't believe that it's another, any other statute except for Title II, that particular type of language. Anything else, Judge Raff? Yeah. Judge Edwards? No, thank you. Okay, we're, you're a little bit over time, but we'll give you some rebuttal. Thank you. Mr. Murata, good morning. Morning. Thank you, Judge Katsas. And may it please the court, Sean Murata on behalf of the Applea Airbnb. There are essentially three questions in this case, contract formation, enforceability of the arbitral agreement, and then vacant or of the arbitral award. But I think like my friend on the other side, I'll spend most of my time on contract formation this morning. On contract formation, the question is whether a reasonably sophisticated smartphone user would find the terms reasonably conspicuous. And for those following along at home, the key screens are JA-201, which is the initial three box screen, and JA-205, which is the second screen that you would see if you click sign up with email. Because one of the discussions today has been about that first screen. And as the district court found that first screen and the first sign up through Facebook is all the court needs to affirm to decide this case. But even if the court had any lingering doubts about that first screen, don't forget that Mr. Selden signed up twice again through the second sign up with email process in which he would have seen a second screen, which again warned him about what he was about to do by clicking the sign up button. And note that that second screen places the warning about by signing up, I agree to Airbnb's terms of service above the sign up button, which reduces any concerns about people being distracted or somehow clicking on the button before you've entirely taken in the page. But even with regard to the first sign up screen, my friend has cited no case where a sign up with Facebook button, which as the court noted is a fairly common feature across apps, which allows people to create their accounts by filling in personal information from other services that they may use does not provide reasonable notice. In fact, Myers in the payment screen, which is what we replicate at page 28 of the red brief, has the same divided setup. In fact, in that case, you had the registration or the sign up with email equivalent at the top and the buttons for signing up with Google wallet and PayPal at the bottom and the warning about by signing up, I agree to following it. And that was found to be sufficient. And there's really four features about Airbnb sign up page that make it reasonably conspicuous here. First, the by signing up warning appears roughly in the middle of the page. It's in close proximity to all three boxes. Second, the links appear in a dark red font that contrasts the white background and contrast with the black text around it. Mr. Seldon argues in his brief that the mix of colors would be confusing. In fact, it's the mix of colors that makes it conspicuous because a reasonable internet user would understand, oh, if some text is black, and some text is red, what makes the red text different is it must be a hyperlink. And third, the text is clearly legible. It's roughly the same size as already an Airbnb member sign in, which again, gives a hint that it's a hyperlink because if you see a login that's in the red text, you must realize that, oh, the other red text must be hyperlinks as well. And the page is simple and uncluttered. The only elements on the page are the three sign up buttons, the by signing up, I agree warning, and the already an Airbnb member statement. That's all that's on the page. So there's nothing to draw the user away or distract them or to keep him from noticing the terms of those reasons. There is, it's a reasonably sophisticated internet user, not someone who's dropped it from Mars and has never used a computer before. But someone who uses a smartphone in their everyday life would understand what he was about to do by signing up. And courts have routinely held that this kind of sign up wrap is enforceable. Judge Rao, you asked if there are statutes that categorically do not allow for arbitrability in the title two content, or you asked regarding title two. One example is the automobile dealers fair day in court act, I think it's called. And what that statute simply says, and says quite clearly is, there cannot be pre arbitration disputes under for claims that arise out of this act. So when Congress wants to make something arbitrable, it rarely does it because of the strong principle in favor of arbitrability. But it does, though. Also, the Federal Arbitration Act itself has exclusions to arbitrability such as contracts that involve, I think, interstate transportation and commerce. Title two, by contrast, says that there's federal court jurisdiction under it, but that does not displace the arbitral forum. And it says that the remedies in the statute are exclusive, which is fine, because under the arbitration agreement, Mr. Selden could have received every single remedy that's available to him under title two or any of the other statutes. Is there any case law that is, there's no title two specific arbitrability law, I think, because title two claims themselves are fairly unusual in the federal courts. But of course, title seven, this language is not typical. Are there any other statutes with this language that have reached the construction that you want? Um, I don't know, with regard to this is not usual language. And I see how you're trying to parse it. But where is that coming from? Well, I think it's coming from two places. The first is just the general presumption of arbitrability. Okay, forget that. I understand that. But the problem is you have the general presumption of presumption is rebuttable. And so the question is whether this language, which is not typical, it's just not typical language, it says this is the exclusive suggest this is the exclusive remedy and you're in court. Are there any other statutes or any, any case law construing this statute, reaching the result that you want? Because it's not self-evident to me when I first read that, I just didn't remember it. When I first read, read it, it did not occur to me that the construction you're giving is the plausible construction. I think it's the plausible construction judge Edwards for the symbol. And let me answer the question versus I'm not aware necessarily of any case that construes title two and arbitration. And I'm not necessarily aware of other statutes that use the exact same language, though. I'm not going to say they're not out there. But I think mom, I'm assuming you would have found them if they were there. I assume you would have as well, Judge Edwards. But what I would say is that, you know, the burden falls on Mr. Selden to show that the, that the language admits of the construction that there is. Well, I mean, what I'm asking you, what I'm suggesting is the language facially admits of the construction that they're propounding. And I'm trying to figure out why, why we would go in a way that's inconsistent with that language would suggest that the exclusive remedy is in court. Well, but I would just I would disagree, Judge Edwards, because I the language in the statute doesn't say the exclusive remedy is in court. It says federal courts have jurisdiction. And it says that the remedies in this act are the exclusive remedies, but they never marry up the two and say the exclusive remedies are in court. So what that means is, is that, for instance, you can go to federal court, you don't have to And it says that these remedies are the only one, so you don't supplement them with common law remedies. But the statute never says the exclusive remedies are court remedies. And that's the key part. Can I press you on that a little bit? Because the statute says, I agree with you on the jurisdictional provision, but then there's a remedies provision. And it says the remedies provided shall be the exclusive means of enforcing. Now the word remedies is a little bit ambiguous. It could mean form of relief. But it also could mean forum or tribunal, right, we often speak of judicial remedies, as opposed to arbitral remedies. And this statute talks about remedies as a means of enforcing, which to me at least somewhat suggests or connotes a forum rather than a type of relief. I would disagree with that, Judge Katsas, because I think when you speak of the remedies, it's talking about, you know, we're not supplementing common law remedies, let's say. Instead, what it's saying is that the remedies that are in this act are the only way you are going to enforce the act, not other things that you might draw from the common law. And of course, if there's anything settled in the arbitrable case law, it's that it is perfectly fine to simply swap out a judicial forum from an arbitrable forum, so long as you could get the same substantive relief you could have in court. And I don't understand your forum to be one of the remedies that's afforded under the act. It might be the place you bring the suit, but it is not one of the remedies that the act provides. In fact, I'm not aware of jurisdiction being a way that you enforce something. It might be the place you go to enforce something if you're parsing the text, but it's not an actual enforcement of the act. But even then, you have to consider that, you know, to the extent you may think there may be an ambiguity in the language, all of that has to be read against the general presumption in favor of arbitrability that says that if Congress wants to make something non-arbitrable, it has to be fairly clear in doing so. And so, as I said, in the Automobile Dealer Fair Day in Court Act, it just simply said, these claims may not be arbitrated, at least in a pre-dispute way. You know, the Federal Arbitration Act itself carves out certain things. So, you know, again, to the extent you think there is some play in the joints in the language, it has, I think, the presumption carries us the rest of the way, unless the Court has further questions. Judge Rao? No. Judge Edwards? No, thank you. Thank you, Mr. Morata. Mr. Amaduri, we'll give you a minute. Thank you, Judge. I just wanted to touch upon a couple of points from my colleague, Mr. Morata. I think, again, I've tried to make the distinction to the Court of the payments screen versus the sign-up screen in Uber and Airbnb. But again, let me just touch upon the Title II statute really quickly. I think that the Court must take a look at the intent and purpose of the statute. I don't believe, I still rely on Atlanta Motel as our principal case, and I think that the intent and purpose of the statute is within that case. I don't think that Airbnb has even tried to distinguish that case or look at the purpose and intent within the briefs. But I'll also suggest, Your Honor, that the remedy is the form and that the federal courts provide, promote, or advance the intent and purpose of Title II, of the statute itself. And that is all that I have for my last minute. Thank you, Mr. Amaduri. The case is submitted. Thank you, Judge. Thank you.
judges: Katsas, Rao, Edwards